UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Docket no. 2:04-cr-00093-GZS |
| LAWRENCE MAHER, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING COMPASSIONATE RELEASE**

Before the Court is Defendant Lawrence Maher's *pro se* motion, which he has titled, "Motion Re-Submitting, for Judicial Recommendation to BOP for Home Confinement Through the Care's Act" (ECF No. 149). The Court construes this Motion as alternatively renewing his earlier requests for compassionate release. For reasons explained herein, the Court GRANTS the Motion.

I. **BACKGROUND**

On December 9, 2004, a jury found Maher guilty of one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C). In April 2005, this Court sentenced him to a term of 262 months imprisonment to be followed by six years of supervised release (See ECF Nos. 50 & 51.) Maher, now sixty-one years old, has served approximately seventy-five percent of this sentence and has a current estimated release date of March 1, 2023.[1] He is presently serving his sentence at Fort Dix FCI in New Jersey. This BOP facility has had a

---

[1] See www.bop.gov (last visited September 14, 2020).

total of thirty-six inmates and six staff test positive for COVID-19, although it is not reporting any positive cases presently.

Maher's relevant medical history is detailed in his prior submissions to the Court.  (See ECF Nos. 142 & 142-2.)  In 2014, he was treated for prostate cancer.  This treatment resulted in chronic urinary and gastrointestinal issues. Over the last three years, he has required multiple medical visits for issues related to persistent coughing and shortness of breath.  He is diagnosed with COPD and severe emphysema.  Since 2017, he has had repeated diagnostic tests on his lungs that showed multiple rib fractures and suggested possible malignancies.  In early 2020, a PET scan showed a new mass in his lungs and it was recommended that he have this mass biopsied.  Most recently, it appears that the combination of the COVID-19 pandemic and his status at as a BOP inmate has impeded his ability to obtain the recommended biopsy and also his ability to obtain necessary medications and breathing treatments.  (See ECF No. 142-2 ("4/2/2020 – Denied entry to hospital for lung biopsy due to COVID" & ECF No. 149 (asserting that he was held in medical isolation in June 2020 for "five days without meds [except] albuterol").)  In the context of the current pandemic, the Government acknowledges that Maher presents "evidence of significant health issues which may make Maher more vulnerable to COVID-19."  (ECF No. 154, PageID # 968)  However, the Government has not provided the Court any assurances as to how and when it would secure Maher a diagnosis or any required treatment for his presumed lung cancer if he were to remain in custody until March 2023.

The Court has considered and denied two prior requests from Maher to allow him to be released from BOP custody prior to his projected 2023 release date.  (See ECF Nos. 125 & 147.) Notably, the latter June 2020 denial was based on the Court concluding it did not have jurisdiction

because of a pending appeal of the first order. The First Circuit has since granted Maher's request to dismiss that appeal. (See ECF Nos. 148 & 152.)

## II.     DISCUSSION

As to the initial hurdle of exhaustion of administrative remedies, the Court concludes that Maher meets the exhaustion requirement as a result of his March 19, 2020 and April 6, 2020 requests (ECF No. 138-2 & 138-3) to which he received no response.[2]

Turning to the merits, the Court must find that there are "extraordinary and compelling reasons" that presently warrant a reduction in Maher's sentence. 18 U.S.C. § 3582(c)(1)(A)(i). In the Court's current assessment, the confluence of Maher's medical conditions, the risks associated with COVID-19, and the healthcare delays he is experiencing due to the pandemic qualifies as extraordinary and compelling under U.S.S.G. § 1B1.13 Application Note 1(A) & (D). In short, Maher has serious medical conditions that place him at a material greater risk for serious illness from COVID-19. He is not expected to recover from those underlying health conditions. Additionally, the impact of the COVID-19 pandemic has demonstrably diminished his ability to obtain necessary care while he remains detained at his current facility.[3] Moreover, given his overall health and the ongoing strain created by the pandemic within BOP facilities, the Court concludes that it is unlikely that remaining in prison until early 2023 will yield any additional

---

[2] The Court notes that Maher's *pro se* filings also include a letter addressed to Attorney General Barr, dated April 14, 2020 (ECF No. 138-4), in which he seeks assistance for the Warden's failure to respond to his March 19, 2020 and April 6, 2020 requests for relief.

[3] The Court notes that a diagnosis of a "terminal illness" can also qualify as an "extraordinary and compelling reason" under U.S.S.G. § 1B1.13 Application Note 1(A)(i). In this case, the record suggests that medical professionals that have seen Maher in 2020 suspect that he may have metastatic lung cancer, but care restrictions and delays related to the pandemic have prevented Maher from receiving an actual diagnosis.

training, treatment, or deterrence for Maher that would make him more successful in his transition to supervised release.

Before granting any sentence reduction, there is one additional step: the Court must determine that the "defendant is not a danger to the safety of any other person or the community." U.S.S.G. § 1B1.13(2); see also 18 U.S.C. § 3582(c)(1)(A). This requires the Court to consider and balance in relevant part:

> (1) the nature and circumstances of the offense charged,
> (2) the weight of the evidence against the person,
> (3) the history and characteristics of the person, including—
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings . . . .
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). As noted by the Government, the Court acknowledges that while Maher was convicted of a non-violent drug distribution offense, his 2005 presentence report detailed the use of a firearm to threaten a customer "if she 'ratted on' him." (ECF No. 135, PageID # 817.) Additionally, he had a criminal history score of VI at the time of his sentencing. However, there is nothing in the record that suggests Maher has been prone to acts that would endanger others in the last decade. Notably, as discussed in the briefing, Maher has a low pattern score and has had only one incident report during his over sixteen years in custody. Maher has completed nonresidential drug treatment and twelve educational courses showing further evidence of his rehabilitation. (See ECF No. 151.) Finally, he has indicated that he has plans to reside with his significant other and asserts that he has access to some health benefits upon release. (See ECF No. 149, PageID # 909.)

Having considered Maher's entire history and all of the relevant factors in light of the current record, the Court concludes that he is not a danger to the safety of any other person or the community. The Court notes that in connection with Maher's recent requests for a home confinement recommendation, the Government has indicated no objection to such a recommendation. In the Court's view, the position taken by the Government reaffirms the Court's current assessment that given Maher's age and health conditions he can be supervised within the community and not pose a danger to anyone.

Having given full consideration to the entire record and all of the applicable factors listed in 18 U.S.C. § 3553(a), the Court exercises its discretion to reduce Maher's term of incarceration and allow him to begin his six-year term of supervised release.[4] However, to ensure Maher's successful transition to supervised release, the Court also exercises its discretion to stay execution of an amended "time served" judgment for thirty days so that an approved release plan can be developed. This stay is subject to a further extension of up to thirty days upon the Government showing that additional time in custody is necessary to ensure that Maher's release plan can be implemented.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 15th day of September, 2020.

---

[4] Having found that the record and procedural posture of this case now supports the Court's use of its discretion to grant Maher compassionate release, the Court concludes that the pending request for a judicial recommendation of home confinement is moot. However, the Court notes that it would have alternatively granted that request without objection.

5